# EXHIBIT 1

COPY

**In the Superior Court of the State of Arizona**
**In and For the County of** Maricopa

Case Number
CV2018-007049

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorney Kaitlyn Redfield-Ortiz

Attorney Bar Number 030318

Is Interpreter Needed?  ☐ Yes  ☒ No
If yes, what language?

CHRIS DEROSE, CLERK
A. MCLOONE
DEPUTY

To the best of my knowledge, all information is true and correct.

For KIRO

**Attorney/Pro Per Signature**
(If no attorney, YOUR signature)

Plaintiff's Name(s):  (List all)
Larissa T. Pixler

Plaintiff's Address:
c/o Lubin & Enoch, PC

349 North Fourth Avenue

Phoenix, Arizona 85003

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s):  (List All)    State of Arizona

Douglas A. Ducey               Daniel Bergin

(List additional defendants on page two and/or attach a separate sheet)

EMERGENCY ORDER SOUGHT:   ☐ Temporary Restraining Order       ☐ Provisional Remedy       ☐ OSC

☐ Election Challenge   ☐ Employer Sanction   ☐ Other _____
(Specify)

☐ RULE 8(i) COMPLEX LITIGATION APPLIES. Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.

(Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category.)

☐ THIS CASE IS ELIGIBLE FOR THE COMMERCIAL COURT UNDER RULE 8.1. Rule 8.1 defines a commercial case and establishes eligibility criteria for the commercial court. Generally, a commercial case primarily involves issues arising from a business contract or business transaction. However, consumer transactions are not eligible. A consumer transaction is one that is primarily for personal, family or household purposes. **Please review Rule 8.1 for a complete list of the criteria**. See http://www.superiorcourt.maricopa.gov/commercial-court/. You must check this box if this is an eligible commercial case. **In addition, mark the appropriate box below in the "Nature of Action" case category**. The words "eligible for commercial court" must appear in the caption of the original complaint.

## NATURE OF ACTION

(Place an **"X"** next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**

☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort

☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.   ☐ 123 Hospital
☐ 122 Physician D.O   ☐ 124 Other

Case No._____

## 130 CONTRACTS:

- [ ] 131 Account (Open or Stated)
- [ ] 132 Promissory Note
- [ ] 133 Foreclosure
- [ ] 138 Buyer-Plaintiff
- [ ] 139 Fraud
- [ ] 134 Other Contract (i.e. Breach of Contract)
- [ ] 135 Excess Proceeds-Sale
- [ ] Construction Defects (Residential/Commercial)
  - [ ] 136 Six to Nineteen Structures
  - [ ] 137 Twenty or More Structures

## 150-199 OTHER CIVIL CASE TYPES:

- [ ] 156 Eminent Domain/Condemnation
- [ ] 151 Eviction Actions (Forcible and Special Detainers)
- [ ] 152 Change of Name
- [ ] 153 Transcript of Judgment
- [ ] 154 Foreign Judgment
- [ ] 158 Quiet Title
- [ ] 160 Forfeiture
- [ ] 175 Election Challenge
- [ ] 179 NCC-Employer Sanction Action
  (A.R.S. §23-212)
- [ ] 180 Injunction against Workplace Harassment
- [ ] 181 Injunction against Harassment
- [ ] 182 Civil Penalty
- [ ] 186 Water Rights (Not General Stream Adjudication)
- [ ] 187 Real Property
- [ ] Special Action against Lower Courts
  (See lower court appeal cover sheet in Maricopa)

- [ ] 194 Immigration Enforcement Challenge
  (§§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

- [ ] Administrative Review
  (See lower court appeal cover sheet in Maricopa)
- [ ] 150 Tax Appeal
  (All other tax matters must be filed in the AZ Tax Court)
- [ ] 155 Declaratory Judgment
- [ ] 157 Habeas Corpus
- [ ] 184 Landlord Tenant Dispute- Other
- [ ] 190 Declaration of Factual Innocence
  (A.R.S. §12-771)
- [ ] 191 Declaration of Factual Improper Party Status
- [ ] 193 Vulnerable Adult (A.R.S. §46-451)
- [ ] 165 Tribal Judgment
- [ ] 167 Structured Settlement (A.R.S. §12-2901)
- [ ] 169 Attorney Conservatorships (State Bar)
- [ ] 170 Unauthorized Practice of Law (State Bar)
- [ ] 171 Out-of-State Deposition for Foreign Jurisdiction
- [ ] 172 Secure Attendance of Prisoner
- [ ] 173 Assurance of Discontinuance
- [ ] 174 In-State Deposition for Foreign Jurisdiction
- [ ] 176 Eminent Domain– Light Rail Only
- [ ] 177 Interpleader– Automobile Only
- [ ] 178 Delayed Birth Certificate (A.R.S. §36-333.03)
- [x] 183 Employment Dispute- Discrimination
- [ ] 185 Employment Dispute-Other
- [ ] 195(a) Amendment of Marriage License
- [ ] 195(b) Amendment of Birth Certificate
- [ ] 163 Other _____
  (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- [ ] Antitrust/Trade Regulation
- [ ] Construction Defect with many parties or structures
- [ ] Mass Tort
- [ ] Securities Litigation with many parties
- [ ] Environmental Toxic Tort with many parties
- [ ] Class Action Claims
- [ ] Insurance Coverage Claims arising from the above-listed case types
  A Complex Case as defined by Rule 8(i) ARCP

**Additional Plaintiff(s)**

_____

_____

**Additional Defendant(s)**

Chuck Stratton; Irene Stratton; Tim Jackson; Maureen T. Jackson; Henry Darwin

_____

**Name of Person Filing:** Kaitlyn A. Redfield-Ortiz
**Your Address:** Lubin & Enoch, PC 349 North Fourth Avenue
**Your City, State, Zip Code:** Phoenix, Arizona 85003
**Your Telephone Number:** 602-234-0008
**Attorney Bar Number (if applicable):** 030318
**Representing** ☐ **Self (Without an Attorney) or** ☒ **Plaintiff or** ☐ **Defendant**

ORIGINAL

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

Larissa T. Pixler
**Name of Plaintiff**

**Case No.:** CV2018-007649

State of Arizona, et al.
**Name of Defendant**

## SUMMONS

If you would like legal advice from a lawyer,
Contact the Lawyer Referral Service at
602-257-4434

**WARNING: This is an official document from the court that affects your rights. Read this carefully.**
**If you do not understand it, contact a lawyer for help.**

www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

**FROM THE STATE OF ARIZONA TO** Dan Bergin, in his official capacity as the Director of the Arizona Department of Gaming

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2. If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona 85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.   Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3. If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4. You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

5.    Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.


**SIGNED AND SEALED this date**

MAY 3 0 2018
**MICHAEL K. JEANES, CLERK OF COURT**

By_____
Deputy Clerk

A. McLoone
Deputy Clerk

Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County



**Name of Person Filing:** Kaitlyn A. Redfield-Ortiz
**Your Address:** Lubin & Enoch, PC 349 North Fourth Avenue
**Your City, State, Zip Code:** Phoenix, Arizona 85003
**Your Telephone Number:** 602-234-0008
**Attorney Bar Number (if applicable):** 030318
**Representing** ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

Larissa T. Pixler            **Case No.:** CV2018-007649
**Name of Plaintiff**

If you would like legal advice from a lawyer,
Contact the Lawyer Referral Service at
**SUMMONS**            602-257-4434
or
State of Arizona, et al.            www.maricopalawyers.org
**Name of Defendant**

> **WARNING: This is an official document from the court that affects your rights. Read this carefully.**
> **If you do not understand it, contact a lawyer for help.**

**FROM THE STATE OF ARIZONA TO** State of Arizona
**Name of Defendant**

1.    A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served
      on you with this *"Summons"*.

2.    If you do not want a judgment or order taken against you without your input, you must file an
      *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an
      *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or
      Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to
      the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona
      85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa,
      Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane,
      Surprise, Arizona 85374.   Mail a copy of your *"Response"* or *"Answer"* to the other party at the
      address listed on the top of this Summons.

3.    If this *"Summons"* and the other court papers were served on you by a registered process
      server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed
      within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day
      you were served.  If this *"Summons"* and the other papers were served on you by a registered
      process server or the Sheriff outside the State of Arizona, your Response must be filed within
      THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were
      served. Service by a registered process server or the Sheriff is complete when made. Service
      by Publication is complete thirty (30) days after the date of the first publication.

4.    You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the
      address at the top of this paper, or from the Clerk of the Superior Court's Customer Service
      Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona
      85210.

5.    Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.


**SIGNED AND SEALED this date**                    MAY 3 0 2018
                                                   **MICHAEL K. JEANES, CLERK OF COURT**

By_____
        **Deputy Clerk**

**Form #210**  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County



**Name of Person Filing:** Kaitlyn A. Redfield-Ortiz
**Your Address:** Lubin & Enoch, PC 349 North Fourth Avenue
**Your City, State, Zip Code:** Phoenix, Arizona 85003
**Your Telephone Number:** 602-234-0008
**Attorney Bar Number (if applicable):** 030318
**Representing** ☐ **Self (Without an Attorney) or** ☒ **Plaintiff or** ☐ **Defendant**

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

Larissa T. Pixler
**Name of Plaintiff**

State of Arizona, et al.
**Name of Defendant**

**Case No.:** CV2018-007649

## SUMMONS

If you would like legal advice from a lawyer,
Contact the Lawyer Referral Service at
602-257-4434
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

---

**WARNING: This is an official document from the court that affects your rights.  Read this carefully.
If you do not understand it, contact a lawyer for help.**

---

**FROM THE STATE OF ARIZONA TO** Henry Darwin
                                 **Name of Defendant**

1.  A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.   Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.  If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

5.   Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

MAY **3 0** 2018

**SIGNED AND SEALED this date** _____

**MICHAEL K. JEANES, CLERK OF COURT**

By_____
Deputy Clerk

A. McLeone
Deputy Clerk

Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County



**Name of Person Filing:** Kaitlyn A. Redfield-Ortiz
**Your Address:** Lubin & Enoch, PC 349 North Fourth Avenue
**Your City, State, Zip Code:** Phoenix, Arizona 85003
**Your Telephone Number:** 602-234-0008
**Attorney Bar Number (if applicable):** 030318
**Representing** ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

Larissa T. Pixler
**Name of Plaintiff**

**Case No.:** CV 2018-007649

State of Arizona, et al.
**Name of Defendant**

**SUMMONS**

If you would like legal advice from a lawyer,
Contact the Lawyer Referral Service at
602-257-4434
www.maricopalawyers.org

┌─────────────────────────────────────────────────────────────────┐
│ **WARNING: This is an official document from the court that affects your rights. Read this carefully.** │
│ **If you do not understand it, contact a lawyer for help.** │
└─────────────────────────────────────────────────────────────────┘

**FROM THE STATE OF ARIZONA TO** Douglas A. Ducey, in his individual capacity

1.      A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.      If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.   Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.      If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "*Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.      You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

5.  **Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.**

MAY **3 0** 2018

SIGNED AND SEALED this date

**MICHAEL K. JEANES, CLERK OF COURT**

By

Deputy Clerk

A. McLeone
Deputy Clerk

Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County



Name of Person Filing: <u>Kaitlyn A. Redfield-Ortiz</u>
Your Address: <u>Lubin & Enoch, PC 349 North Fourth Avenue</u>
Your City, State, Zip Code: <u>Phoenix, Arizona 85003</u>
Your Telephone Number: <u>602-234-0008</u>
Attorney Bar Number (if applicable): <u>030318</u>
Representing ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

CV2018-007649

<u>Larissa T. Pixler</u>
**Name of Plaintiff**

Case No.:_____

<u>State of Arizona, et al.</u>
**Name of Defendant**

## SUMMONS

If you would like legal advice from a lawyer,
contact the Lawyer Referral Service at
602-257-4434
or
sponsored by the
Maricopa County Bar Association

┌─────────────────────────────────────────────────────────────────────┐
│ **WARNING: This is an official document from the court that affects your rights. Read this carefully.** │
│ **If you do not understand it, contact a lawyer for help.** │
└─────────────────────────────────────────────────────────────────────┘

**FROM THE STATE OF ARIZONA TO** Douglas A. Ducey, in his official
capacity as Governor of the State of
Arizona

1.  A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.   Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.  If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

5.   Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

MAY **3 0** 2018

SIGNED AND SEALED this date

**MICHAEL K. JEANES, CLERK OF COURT**

By _____
          Deputy Clerk

A. McLoone
Deputy Clerk

**Form #210** LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

**Name of Person Filing:** Kaitlyn A. Redfield-Ortiz
**Your Address:** Lubin & Enoch, PC 349 North Fourth Avenue
**Your City, State, Zip Code:** Phoenix, Arizona 85003
**Your Telephone Number:** 602-234-0008
**Attorney Bar Number (if applicable):** 030318
**Representing** ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

**ORIGINAL**

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

Larissa T. Pixler
**Name of Plaintiff**

**Case No.:** CV 2018-007649

**SUMMONS**

State of Arizona, et al.
**Name of Defendant**

Would like legal advice from a lawyer,
Contact the Lawyer Referral Service at
602-257-4434
or
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

**WARNING: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help.**

**FROM THE STATE OF ARIZONA TO** Maureen T. Jackson
**Name of Defendant**

1.  A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.   Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.  If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "*Response*" or "*Answer*" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

**Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED**
© Clerk of Superior Court of Arizona in Maricopa County

5.  Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

MAY 3 0 2018

SIGNED AND SEALED this date

MICHAEL K. JEANES, CLERK OF COURT

By

Deputy Clerk

A. McLoone
Deputy Clerk

Page 2 of 2          Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County



**Name of Person Filing:** Kaitlyn A. Redfield-Ortiz
**Your Address:** Lubin & Enoch, PC 349 North Fourth Avenue
**Your City, State, Zip Code:** Phoenix, Arizona 85003
**Your Telephone Number:** 602-234-0008
**Attorney Bar Number (if applicable):** 030318
**Representing** ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

CV2018-007649

Larissa T. Pixler                                   **Case No.:**
**Name of Plaintiff**


State of Arizona, et al.                            **SUMMONS**
**Name of Defendant**

If you would like legal advice from a lawyer,
Lawyer Referral Service at

---
**WARNING: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help.**

---

www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

**FROM THE STATE OF ARIZONA TO__** Tim Jackson
                                    **Name of Defendant**

1.    A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.    If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.  Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.    If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.    You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

5.   Requests for reasonable accommodation for persons with disabilities must be made to the
     office of the judge or commissioner assigned to the case, at least five (5) days before your
     scheduled court date.



SIGNED AND SEALED this date

MAY **3 0** 2018

**MICHAEL K. JEANES, CLERK OF COURT**

By _____
Deputy Clerk

A. McLoone
Deputy Clerk



**Name of Person Filing:** <u>Kaitlyn A. Redfield-Ortiz</u>
**Your Address:** <u>Lubin & Enoch, PC 349 North Fourth Avenue</u>
**Your City, State, Zip Code:** <u>Phoenix, Arizona 85003</u>
**Your Telephone Number:** <u>602-234-0008</u>
**Attorney Bar Number (if applicable):** <u>030318</u>
**Representing** ☐ **Self (Without an Attorney) or** ☒ **Plaintiff or** ☐ **Defendant**

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

<u>Larissa T. Pixler</u>
**Name of Plaintiff**

**Case No.:** CV2018-007049

<u>State of Arizona, et al.</u>
**Name of Defendant**

# SUMMONS

> **WARNING: This is an official document from the court that affects your rights. Read this carefully.**
> **If you do not understand it, contact a lawyer for help.**
> If you would like legal advice from a lawyer,
> contact the Lawyer Referral Service at
> 602-257-4434
> or
> www.maricopalawyers.org
> Sponsored by the

## FROM THE STATE OF ARIZONA TO_ Chuck Stratton
**Name of Defendant**

1.    A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.    If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.   Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.    If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.    You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

5.   Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

MAY 30 2018

**SIGNED AND SEALED this date**

**MICHAEL K. JEANES, CLERK OF COURT**

By_____
        **Deputy Clerk**

A. McLoone
Deputy Clerk

Page 2 of 2

Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

**ORIGINAL**

Name of Person Filing: Kaitlyn A. Redfield-Ortiz
Your Address: Lubin & Enoch, PC 349 North Fourth Avenue
Your City, State, Zip Code: Phoenix, Arizona 85003
Your Telephone Number: 602-234-0008
Attorney Bar Number (if applicable): 030318
Representing ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

CV 2018-007649

Larissa T. Pixler                              Case No.:_____
**Name of Plaintiff**

State of Arizona, et al.                       **SUMMONS** If you would like legal advice from a l
**Name of Defendant**                                        Contact the Lawyer Referral Servic
                                                                           602-257-4434
                                                                                or
| WARNING: This is an official document from the court that affects your rights. Read this carefully. www.maricopabar.org
| If you do not understand it, contact a lawyer for help.                                        sponsored by the
                                                                           Maricopa County Bar Association

**FROM THE STATE OF ARIZONA TO__** Irene Stratton
                                    **Name of Defendant**

1.    A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served
      on you with this *"Summons"*.

2.    If you do not want a judgment or order taken against you without your input, you must file an
      *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an
      *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or
      Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to
      the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona
      85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa,
      Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane,
      Surprise, Arizona 85374.   Mail a copy of your *"Response"* or *"Answer"* to the other party at the
      address listed on the top of this Summons.

3.    If this *"Summons"* and the other court papers were served on you by a registered process
      server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed
      within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day
      you were served.  If this *"Summons"* and the other papers were served on you by a registered
      process server or the Sheriff outside the State of Arizona, your Response must be filed within
      THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were
      served. Service by a registered process server or the Sheriff is complete when made. Service
      by Publication is complete thirty (30) days after the date of the first publication.

4.    You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the
      address at the top of this paper, or from the Clerk of the Superior Court's Customer Service
      Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona
      85210.

5.   Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

MAY 3 0 2018

**SIGNED AND SEALED this date**

**MICHAEL K. JEANES, CLERK OF COURT**

By _____
          Deputy Clerk

A. McLoone
Deputy Clerk

Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

1   LUBIN & ENOCH, P.C.
    Nicholas J. Enoch, State Bar No. 016473
2   Kaitlyn A. Redfield-Ortiz, State Bar No. 030318
    Stanley Lubin, State Bar No. 003076
3   349 North Fourth Avenue
    Phoenix, Arizona 85003-1505
4   Telephone: (602) 234-0008
    Facsimile: (602) 626-3586
5   E-mail: nick@lubinandenoch.com

6
    *Attorneys for Plaintiff*
7

8   **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
    IN AND FOR THE COUNTY OF MARICOPA**

9   Larissa T. Pixler, a married woman,          )  Case No.:  CV2018-007649
                                                  )
10            Plaintiff,                          )  **COMPLAINT**
                                                  )
11  vs.                                           )
                                                  )
12  State of Arizona; Douglas A. Ducey, in his    )
13  official capacity as Governor of the State    )
    of Arizona; Daniel Bergin, in his official    )
14  capacity as the Director of the Arizona       )
    Department of Gaming; Chuck Stratton,         )
15  the Assistant Director of Gaming              )
    Compliance, in his individual capacity, and   )
16  Irene Stratton, husband and wife; Tim         )
    Jackson, the Deputy Director of the           )
17  Arizona Department of Gaming, in his          )
    individual capacity, and Maureen T.           )
18  Jackson, husband and wife; Henry Darwin,      )
    the Chief Operating Officer for Governor      )
19  Douglas A. Ducey, in his individual           )
    capacity,                                     )
20                                                )
                                                  )
21            Defendants.                         )

22

23

24

COPY

MAY 30 2018

CHRIS DEROSE, CLERK
A. MELOONE
DEPUTY CLERK

1

Plaintiff, Larissa T. Pixler, by and through her attorneys, Lubin & Enoch, P.C., brings this action pursuant to the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1983.

### Introduction

1.      This case concerns the wrongful and illegal termination of Larissa T. Pixler ("Pixler"), a twenty-year veteran of the Office of Problem Gambling, a division of the Arizona Department of Gaming.  In her final assignment, Pixler served as the Office of Problem Gambling Program Director, that division's top role.

2.      Over her tenure, Pixler's numerous superiors described her as "a credible supervisor and leader," "extremely valuable," an "excellent representative for this agency," "absolutely committed to providing outstanding customer service," and performing "at a high level in all aspects of her job."  In her most recent evaluation, Pixler "exceeded expectations" and earned her highest-ever numeric score.

3.      On July 25, 2016, Defendants abruptly terminated Pixler, unexpectedly ending her career at the age of 61 years old.

4.      Three months prior to her termination, in April 2016, Pixler voluntarily participated in an investigation conducted by the Arizona Department of Administration ("ADOA") into sexual harassment committed by her bosses, four senior members of the Arizona Department of Gaming, which resulted in the termination of two of those staff.

5.      Seven days after her participation, Defendants took disciplinary action against Pixler, the first discipline of her entire career.  Three months later, shortly after

2

1  her twenty-year anniversary with the Division and just months after her highest-ever

2  performance evaluation, Defendants terminated Pixler.

3      6.    Pixler is one of over 1,700 state employees fired in 2015 and 2016 by the

4  Ducey administration,[1] whose rumored goal is to eliminate 24% of state employees.  The

5  Arizona Republic has noted that most of those fired, like Pixler, are female minorities,

6  and 64% are over the age of 40.[2]

7      7.    This case is about the untimely and unjust end to the career of a committed,

8  hardworking civil servant, whose participation in the state's investigation of her

9  superiors' abusive and wasteful behaviors led to retaliation, reprisal, and ruin.

10  

11                         **Jurisdiction and Venue**

12      8.    This Court has subject matter jurisdiction over this case pursuant to A.R.S.

13  § 12-123.

14      9.    Venue is proper in this Court pursuant to A.R.S. § 12-401.

15                              **Parties**

16      10.   Larissa Pixler is a twenty-year veteran of the Office of Problem Gambling

17  ("OPG" or "the Office"), a division within the Arizona Department of Gaming ("ADG").

18  She was appointed the OPG Program Director in May 2014.

19  

20  

21  _____

[1]   *See* https://www.azcentral.com/story/news/politics/arizona/2017/02/01/arizona-rash-of-state-firings-slows-down-amid-tighter-oversight-imposed-by-governor-ducey/97158378/ (last accessed March 5, 2018).

22  [2]   *See* https://www.azcentral.com/story/news/local/arizona-investigations/2016/10/17/state-firings-increasing-under-gov-doug-duceys-administration/91678058/ (last accessed March 5, 2018).

23  

24

11.     Pixler brings this lawsuit against the State of Arizona, and Douglas A. Ducey, Governor of the State of Arizona.  Governor Ducey is named as a defendant for Pixler's claims under Title VII claim and the Age Discrimination in Employment Act.

12.     Daniel Bergin is the Director of the ADG.  He is named as a defendant for all claims.  He is sued in his official capacity for injunctive relief and in his personal capacity for compensatory and punitive relief under *Ex Parte Young*.  Arizona statutes do not authorize the Director of the ADG to sue or be sued, *see* Federal Rule of Civil Procedure 17(b)(3), but *Ex Parte Young*, which "holds, as a matter of federal common law, that any state officer who allegedly violates federal law may be sued for injunctive relief in federal court, . . . appears to create an exception to Rule 17(b)'s requirement that a state officer's amenability to suit be determined by state law." *Tohono O'odham Nation v. Ducey*, 174 F.Supp.3d 1194, 1200 (D. Ariz. 2016).

13.     Chuck Stratton was the Assistant Director of Gaming Compliance at the Arizona Department of Gaming.  He is named in his individual capacity for compensatory relief.  Chuck Stratton and Irene Stratton are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona.  The acts engaged in and the omissions made by the Strattons were performed as agents and for the benefit of the marital community.

14.     Tim Jackson was the Deputy Director of the Arizona Department of Gaming.  He is named in his individual capacity for compensatory relief.  Tim Jackson and Maureen T. Jackson are now, and at all times relevant hereto have been, husband and

4

1  wife, constituting a marital community under the laws of the State of Arizona.  The acts

2  engaged in and the omissions made by the Jacksons were performed as agents and for the

3  benefit of the marital community.

4       15.     Henry Darwin ("Darwin") was the Chief Operating Officer for Governor

5  Ducey.  Darwin is responsible for reviewing all terminations in state government.[3]  He is

6  named in his individual capacity for compensatory relief.

7                                **General Allegations**

8                            *Pixler's Professional Background*

9

10      16.     Pixler came to the Arizona Department of Gaming in 1996.  She began as

11 an Administrative Assistant, and worked her way up to the highest role in the Office of

12 Problem Gambling.  During her twenty-year tenure, she served in numerous positions,

13 including Certified Intelligence Analyst and Gambling Self-Exclusion Administrator.  In

14 May 2014, she was appointed the OPG Program Director, in which role she oversaw a $2

15 million budget and five employees.

16      17.     In this role, Pixler earned excellent evaluations.  Each year, she was ranked

17 "Exceeds Expectations," and her numeric score increased from 2.67 out of 3.0 during her

18 first year as Program Director to 2.78 in her final year.

19

20

21      _____

    [3]    "'I personally review every case, and I talk to the HR manager in every case
22 that warrants termination,' Darwin said. 'They were justified.'" *See*
    https://www.azcentral.com/story/news/politics/arizona/2017/02/01/arizona-rash-of-state-
23 firings-slows-down-amid-tighter-oversight-imposed-by-governor-ducey/97158378/ (last
    accessed March 5, 2018).

24

                                         5

18.     In her three years as Program Director, Pixler was reviewed by three different superiors, including Leslie Welch, John Briney, and Daniel Bergin.  All of them lauded her work as "outstanding," "exceptional," "proactive and self-motivated."  Each commended her "strong written and verbal communication skills," her "commit[ment] to her responsibilities," and her ability to "actively encourage[ ] a respectful and open exchange of ideas and viewpoints."

19.     One supervisor commented that "Larissa is known nationally for her contributions to problem gambling self-exclusion programs."  In 2015, Pixler was appointed to a national board, the Association of Problem Gambling Service Administrators.

20.     Pixler adored her job, and did not intend to retire for some time.  In fact, in the same year she was terminated, she completed a Masters of Administration in Public Management through Northern Arizona University.

*The ADOA Investigation into Sexual Harassment in the Arizona Department of Gaming*

21.     For years, the upper echelons of the ADG have been plagued by sexual harassment and misconduct.  During Pixler's tenure, she watched as her bosses harassed and abused numerous female subordinates.  The most egregious offenders included Pixler's direct supervisor, John Briney ("Briney"), the Deputy Director of the Arizona Department of Gaming, and executive staff member, Eric Sloan ("Sloan"), Chief of Public Policy and Governmental Affairs.  Briney and Sloan reported to Daniel Bergin ("Bergin"), the Director of the ADG.

6

22.     Briney and Sloan made inappropriate sexual jokes, sent unsolicited sexual

text messages, and made degrading remarks about their female employees' appearance

and age.  They also bullied women in their professional capacities by, for instance, loudly

debating which employee should be fired, or by requesting a certain assignment, and then

when the employee delivered the assignment, falsely claiming that he had instructed her

to do something else entirely and accusing her of intentionally defying him.

23.     Many women complained, quit, or were transferred away from the

harassing male supervisors, but to Pixler's knowledge, no actions were ever taken against

the men.  When employees attempted to complain about Briney's and Sloan's behavior to

Bergin, they were physically prevented from doing so by Briney and Sloan, who would

stand guard outside Bergin's office or enter Bergin's office with the complaining

employee, preventing her from speaking freely.  Bergin was also friends with Briney and

Sloan, and often engaged in fraternizing behavior with them, such as playing guitar and

video games in the office, misusing their phones to disrupt office meetings, and sharing

private jokes.

24.     For Pixler, these issues came to a tipping point in early 2016.  In early

2015, Kristen Micurescu, Pixler's friend and colleague, began telling Pixler about

escalating abusive behavior by Briney.  Micurescu had complained through OPG's

channels but received no relief.  In January 2016, Micurescu learned that she was

pregnant.  Briney's ongoing harassment caused her extreme stress, and she was suffering

from other health concerns, which combined, led her to fear losing her pregnancy.  She

7

1   decided to complain to Jan Plank ("Plank") with the Arizona Department of

2   Administration ("ADOA").  Two of Pixler's staff accompanied Micurescu.  Upon their

3   return from the ADOA, the staff members requested that Pixler be an additional witness,

4   as they believed her testimony would carry significant weight and credibility.  Pixler

5   agreed.

6       *Pixler's Evaluation of Her Employee, Kathy Donner & Retaliation Against Pixler for*
7                    *Participation in the ADOA Investigation*

8       25.     As the above events were unfolding, Pixler was engaged in the difficult

9   process of evaluating an underperforming employee.

10      26.     In January, state supervisors are required to complete annual performance

11  evaluations, known as "Managing Accountability and Performance" or the "MAP

12  evaluation."

13      27.     For some time, Pixler had been struggling to manage one of her employees,

14  Kathy Donner, whose performance had been substandard.  Pixler had sought the advice

15  of Briney and Ryan Ruelas ("Ruelas"), the OPG Human Resources Supervisor, on how

16  best to handle Donner's disrespectful demeanor, failure to complete requested

17  assignments, and frequent absences.

18

19      28.     In January 2016, Pixler completed Donner's MAP, ranking her as "Meets

20  Expectations," and specifically detailing Donner's strengths and weaknesses.  Pixler sent

21  the evaluation to Briney for his approval.  Briney forwarded it to Ruelas for review, and

22  Ruelas sent it to the ADOA for approval.  The ADOA approved the evaluation with a few

23

24

minor changes. Pixler made the changes and resubmitted the evaluation to Briney. Briney approved the evaluation, and it was released to Donner.

29.     On March 22, 2016, Pixler was called into a meeting with Briney, Ruelas, and Bergin. They informed her that Donner had filed an EEOC complaint about her evaluation, along with a lengthy rebuttal to it. Bergin suggested just increasing Donner's MAP evaluation score to avoid conflict, but Pixler declined, explaining that Donner had received an overall "Meets Expectations," and that she had truthfully and constructively outlined the inadequacies that led to the "Needs Improvement" score on some of the MAP's subparts. Briney asked Pixler to draft a response to Donner's rebuttal by March 30, 2016. Briney said that he would review the response with Pixler to ensure it was ready to submit to Donner. Pixler agreed.

30.     On March 30, 2016, Pixler submitted her ten-page response. Briney flipped through it, made a joke about the "light reading" he had in front of him, and told Pixler that it "looked good." Present at the time in Briney's office was Tim Jackson ("Jackson"), the ADG Office of Continuous Improvement Administrator.

31.     On April 4, 2016, before Briney could review the response with Pixler, as he had promised, he was placed on administrative leave. Pixler believed this was a result of Micurescu's complaint. On that same day, Bergin announced to OPG that Jackson had been named the temporary Deputy Director of ADG, and had "full authority to hire and fire." Bergin, clearly angry that someone had complained about Briney and Sloan, angrily emphasized the words "*and fire*."

9

32.     On April 5, 2016, Pixler was called to meet with Plank, ADOA's Shared Services Manager for Human Resources.  Pixler anticipated that Plank's questions would concern Micurescu's complaint against Briney, on whose behalf she had volunteered to serve as a witness.  However, she learned that the investigation was broader, and concerned sexual harassment and other misconduct by her multiple superiors, including Briney, Sloan, Bergin, and Ruelas, committed against numerous women.  Pixler testified truthfully about the men's behavior.

33.     One week later, on April 12, 2016, Pixler was disciplined by the same individuals against whom she had testified.  Ruelas and Jackson summoned her to a meeting, and presented her with a "Memo of Concern."  Jackson angrily accused Pixler of not following Bergin's and Briney's instructions regarding the March 30 response she had submitted to Donner's rebuttal of her MAP.  Pixler, baffled, recounted the exact instructions she had received from Briney and Bergin.  Ruelas corroborated Pixler's account of Bergin's and Briney's instructions.  Pixler then explained that she spent a great deal of time drafting the document, carefully explaining and substantiating her concerns about Donner.  She explained that she had plans to review and edit the document with Briney, but that he was placed on administrative leave before he had had the chance to do so.

34.     Nevertheless, Jackson continued to accuse Pixler of insubordination, taking issue with the wording in her response.   Pixler again explained that she had been directed by Briney to write a rough draft, and that she and Briney had plans to finesse it together.

35.     During the course of the meeting, Jackson revealed that Pixler's draft document had been inadvertently released to Donner as a part of a public records request. He also made numerous threatening references to how Briney would respond to Pixler when he returned. And although Pixler remained calm and respectful throughout the meeting, Jackson patronized and shamed her, demanding that she never address him informally or directly, instructions Pixler is quite sure she would never have been subjected to if she were male.

36.     The following day, April 13, 2016, Briney and Sloan were fired as a result of the ADOA investigation. Bergin informed the ADG managers, including Pixler, that in the future, staff should address their personnel concerns to him, rather than to the ADOA.

37.     Bergin instructed that Jackson would continue to serve as Acting Deputy Director of ADG, and was now Pixler's immediate supervisor.

38.     On April 20, 2016, Pixler met with Bergin to protest the Memo of Concern ("the Memo") issued to her by Jackson. Bergin met with Pixler, along with Rudy Casillas ("Casillas"), the Acting Director of the Arizona Department of Racing. Bergin began the meeting by saying repeatedly that he "recused" himself from any decision-making. Pixler asked if he had read the Memo, and Bergin replied that he had not, saying again that he wanted to be "recused" from the matter. Pixler stated that she felt that Jackson's Memo was retaliation for her participation in the ADOA investigation of her terminated boss, Briney, and Chief of Public Policy, Sloan. She explained that Jackson, a

friend of Briney and Sloan, seemed to want to punish and intimidate Pixler for having

spoken out against them during the ADOA investigation.  She further explained that she

had taken extraordinary care to respond to Donner's rebuttal in a substantive,

constructive, and respectful way, and had followed Briney's instructions to the letter.

Bergin responded that he would assign Casillas to investigate Pixler's claim of retaliation

by Jackson.

39.     On April 22, 2016, Casillas came to Pixler's office and told her "not to

worry" about the Memo, because it had been dismissed.  He promised to continue

investigating Pixler's claims of retaliation and discriminatory treatment by Jackson.

40.     On or about May 19, 2016, three weeks after filing her EEOC complaint,

Donner's charge was dismissed by the EEOC.

*Pixler's Termination*

41.     During May 2016, the waters seemed to calm for Pixler.  Jackson's Memo

of Concern regarding her had been dropped, and the EEOC dismissed Donner's charge.

Bergin removed OPG from Jackson's responsibility, and assigned its supervision to

Acting Deputy Director, Chuck Stratton ("Stratton").  Moreover, Pixler was having

considerable success at work.  For example, she negotiated a contract with the OPG's IT

service that saved the OPG $21,000.

42.     On July 12, 2016, at the ADG quarterly staff meeting, Pixler was

recognized for twenty years with the agency.

43.     On July 25, 2016, Stratton called Pixler to his office.  Also present were

Ryan Ruelas and ADOA Shared Services Representative, Sylvia Hernandez.  As she sat

down, Stratton said, "Larissa, we called you here to tell you your services are no longer

needed."  She asked whether she was being terminated for Donner's EEOC charge.

Stratton replied only, "Your services are no longer needed."  She was given thirty

minutes to pack and leave.

### *Pixler's Visit to the Arizona State Retirement System*

44.     On August 4, 2016, Pixler met with representatives from the Arizona State

Retirement System ("ASRS") to file her retirement papers.  As she was leaving the

office, the ASRS receptionist struck up a conversation with Pixler, and Pixler eventually

revealed that she had been terminated.

45.     The ASRS receptionist commented that the office had been exceptionally

busy lately with people who had been terminated.  The receptionist stated that it was due

to Governor Ducey's LEAN initiative, through which there was a directive to downsize

state government by 24%.  The receptionist stated that the terminated employees who had

flooded her office recently were all nearing retirement age.

46.     The receptionist's story is corroborated by a series of investigative pieces

written by The Arizona Republic,[4] which reported that the Ducey administration fired

1,700 people in 2015 and 2016, and that "older workers, women and minorities appeared

---

[4]     *See*
https://www.azcentral.com/story/news/politics/arizona/2017/02/01/arizona-rash-of-state-firings-slows-down-amid-tighter-oversight-imposed-by-governor-ducey/97158378/ (last accessed March 10, 2018).

13

to be the targets of those firings," leading the Governor to intervene.  The Arizona

Republic reported that although state agencies reported their firings were due to

employees' "behavior," the newspaper had learned that at least 200 people allegedly fired

for that reason had also received merit bonuses for outstanding service.  As a result of the

investigation, the state implemented a hotline for terminated state employees to call if

they feel they were terminated for discriminatory reasons, and rehired dozens of workers.

47.     The state claims that it closely scrutinizes each termination.  Henry

Darwin, Governor Ducey's Chief Operating Officer, was quoted in The Arizona Republic

stating: "'I personally review every case, and I talk to the HR manager in every case that

warrants termination,' Darwin said. 'They were justified.'"[5]

48.     Pixler filed a timely charge of discrimination with the EEOC, alleging

discrimination under Title VII and the ADEA.  She received a right-to-sue notice on

April 16, 2018.  *See* Exhibit 1.

### First Claim for Relief

**(Against the State of Arizona, Governor Ducey, and ADG Director, Daniel Bergin)**

*Retaliation in Violation of Title VII of the Civil Rights Act of 1964*

49.     It is an unlawful employment practice to discriminate against an individual

"because he has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any

---

[5]     *Id.*

14

1  manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. §

2  2000e-3(a).

3      50.    Under Title VII, a plaintiff establishes a prima facie case of retaliation by

4  proving that (1) she engaged in an activity protected under Title VII; (2) the employer

5  subjected her to an adverse employment action; and (3) there was a causal link between

6  the protected activity and the employer's action.

7      51.    Participation in an informal process is a protected activity under Title VII.

8  *Passantino v. Johnson & Johnson Consumer Prods., Inc.* 212 F.3d 493, 506 (9th Cir.

9  2000).  Termination is an adverse employment action.  The third element of the prima

10  facie case requires that the protected activity was a "but-for" cause of the employer's

11  adverse action.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

12  Pixler's participation in the investigation that resulted in her superiors' termination is the

13  but-for cause of her termination.

14

15                              **Second Claim for Relief**

16  **(Against the State of Arizona, Governor Ducey, and Daniel Bergin)** *Violation of the*

17                      *Age Discrimination in Employment Act*

18      52.    The ADEA makes it unlawful for an employer "to discharge any

19  individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).

20      53.    Although the text of the ADEA makes the law applicable to state

21  employees, *see* 29 U.S.C. § 630(b), the Supreme Court ruled that Congress did not

22  validly abrogate the States' sovereign immunity to suit in passing the ADEA.  *Kimel v.*

23

24

                                          15

1    *Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000).  Thus, in practice, state employees cannot

2    sue under the ADEA.

3       54.    However, if a state opens its courts to suits against the state on state law

4    claims, it cannot assert sovereign immunity as a jurisdictional defense to hear comparable

5    claims against the state brought under federal law.  *Howlett v. Rose*, 496 U.S. 356, 367-

6    75 (1990) (holding that a state court cannot apply a state law sovereign immunity defense

7    to refuse a federal claim, because state law permitted similar claims, and "[t]he

8    Supreme Clause makes [federal] laws the supreme Law of the Land, and charges state

9    courts with a coordinate responsibility to enforce that law according to their regular

10   modes of procedure"); *see also Erickson v. Bd. of Governors*, 207 F.3d 945, 952 (7th Cir.

11   2000) (applying *Howlett* to an employment discrimination claim, stating that "[Plaintiff]

12   may repair to Illinois court—for although states may implement a blanket rule of

13   sovereign immunity . . . Illinois has not done this.  Having opened its courts to claims

14   based on state law, including its own prohibition of disability discrimination by units of

15   state government . . . Illinois may not exclude claims based on federal law.").

16      55.    Arizona does not have a blanket rule of sovereign immunity.  Moreover,

17   the Arizona Civil Rights Act permits state law age discrimination claims to be brought

18   against a state employer.  *See* A.R.S. § 41-1461(5)-(6).  Thus, the state cannot assert

19   sovereign immunity under *Kimel* as a defense to Ms. Pixler's ADEA claim.

20      56.    Under the ADEA, a plaintiff establishes a prima facie case of age

21   discrimination by proving that (1) the defendant discharged the plaintiff; (2) the plaintiff

was 40 years of age or older at the time of discharge; and (3) the defendant discharged the plaintiff because of her age.

57.     Pixler was 61 years of age at the time of her termination.  She is one of thousands of recently-terminated state employees who happen to be female, minorities, and over the age of 40, who were terminated as part of the Governor's efforts to drastically downsize state government.  She asserts that she was terminated because of her age.

### Third Claim For Relief

**(Against Daniel Bergin, Chuck and Irene Stratton, Tim and Maureen Jackson, and Henry Darwin)**

*Violation of 42 U.S.C. § 1983 by Retaliation for Pixler's Exercise of Her First Amendment Rights*

58.     "The First Amendment's guarantee of freedom of speech protects government employees from termination *because of* their speech on matters of public concern."  *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996).  Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the Constitution.  *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984).

59.     "A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights."  *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).  To establish a claim for retaliation for

protected speech under the First Amendment, Pixler must prove the following elements: (1) the speech was on a matter of public concern; (2) Pixler spoke as a private citizen and not as part of her official duties as a public employee; (3) Ms. Pixler's speech was a substantial or motivating factor for her termination. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

60. Pixler spoke on a matter of public concern when she participated in an investigatory interview conducted by the Arizona Department of Administration ("ADOA") regarding inappropriate office behavior, including sexual harassment, by Eric Sloan, Ryan Ruelas, John Briney, and Dan Bergin. *Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006) (finding that a correctional officer's statements about internal sexual misconduct, made in conjunction with an investigation conducted by a state supervisory office, were on a matter of public concern); *Tindal v. Montgomery County Comm'n*, 32 F.3d 1535, 1540 (11th Cir. 1994) (holding that testimony regarding sexual harassment in sheriff's office involved matter of public concern, in part because employee was speaking on behalf of others who had been harassed, not on behalf of her own private claim); *Marshall v. Allen*, 984 F.2d 787, 796 (7th Cir.1993) (male co-worker's verbal support for victims of sexual harassment constituted speech touching upon a public concern).

61. Pixler spoke as a private citizen. "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009). Pixler had no official

duty to complain about her superiors' misconduct and sexual harassment of others. In

fact, she volunteered to do so. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1075 (9th Cir. 2013)

("When an employee prepares a routine report, pursuant to normal departmental

procedure, about a particular incident or occurrence, the employee's preparation of that

report is typically within his job duties . . . By contrast, if a public employee raises within

the department broad concerns about corruption or systemic abuse, it is unlikely that such

complaints can reasonably be classified as being within the job duties of an average

public employee."); *Freitag*, 468 F.3d at 545 (holding that "[i]t was certainly not part of

[plaintiff's] official duties to complain to . . . [a supervisory state agency]," reasoning that

the "right to complain . . . to an independent state agency is guaranteed to any citizen in a

democratic society regardless of his status as a public employee."). And, the

investigation she participated in was conducted by an external supervisory agency, the

ADOA, which is outside Ms. Pixler's chain of command within the OPG and ADG.

*Dahlia*, 735 F.3d at 1074 ("When a public employee communicates with individuals or

entities outside of his chain of command, it is unlikely that he is speaking pursuant to his

duties."). In fact, the ADOA Employee Handbook specifically instructs employees to

make complaints of discrimination *inside* their agencies.

62.     Additionally, Pixler's termination and the mistreatment she endured after

participating in the ADOA investigation indicates that her speech fell outside of her

professional duties. *Dahlia*, 735 F.3d at 1075 ("[T]he fact that an employee is threatened

or harassed by his superiors for engaging in a particular type of speech provides strong

1   evidence that the act of speech was not, as a "practical" matter, within the employee's job

2   duties notwithstanding any suggestions to the contrary in the employee's formal job

3   description."). After the investigation, Ms. Pixler was among a group of employees

4   castigated by Dan Bergin for complaining to the ADOA.

*Prospective Relief for Section 1983 Violation*

5

6        63.     "Although sovereign immunity bars money damages and other

7   retrospective relief against a state or instrumentality of a state, it does not bar claims

8   seeking prospective injunctive relief against state officials to remedy a state's ongoing

9   violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867

10  (9th Cir. 2016) (citing *Ex Parte Young*, 209 U.S. 123, 149-56 (1908).

11

12       64.     The prospective relief permitted under an *Ex Parte Young* action includes

13  reinstatement. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 842 (9th Cir. 1997)

14  ("[R]einstatement is a legitimate request for prospective injunctive relief.").

15                    *Compensatory Relief for Section 1983 Violation*

16       65.     Pixler is entitled to seek recovery from Bergin, the Jacksons, the Strattons,

17  and Darwin, each in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991).

18  A government official may be found personally liable if the plaintiff can demonstrate that

19  the official caused the alleged constitutional injury. *Kentucky v. Graham*, 473 U.S. 159,

20  166-67 (1985). The Eleventh Amendment does not bar suits seeking damages against

21  state officials in their personal capacity. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

22

23

24

66.     These officials are not entitled to qualified immunity.  To determine whether a government official is entitled to qualified immunity, the court must consider (1) whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right;" and (2) whether the right was clearly established at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Terminating Pixler for her speech, as a citizen, on a matter of public concern—her superiors' sexual misconduct—violates her clearly established First Amendment rights.  *See Eng v. Cooley*, 552 F.3d 1062, 1076 (2009) (internal quotation marks and citations omitted) ("There could be no confusion however, that when [plaintiff] commented upon matters of public concern as a citizen and not pursuant to his job responsibilities, his speech was protected by the First Amendment—that rule had long been the law of the land.).

### Punitive Damages for Section 1983 Claims

67.     Punitive damages may be awarded in section 1983 cases against governmental officials acting in their individual capacities.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  A jury may award punitive damages when a defendant's conduct is "malicious, wanton, or oppressive" or when it "involved a reckless or callous indifference to the constitutional rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).  An act may be "oppressive" and trigger a punitive damages award "if done in a manner which injures or damages or otherwise violates the rights of

21

1    another person with unnecessary harshness or severity as by misuse or abuse of authority

2    of power." *Id.* at 809.

3         68.    Terminating Pixler in retaliation for her participation in an investigation

4    into the misconduct of her superiors is plainly an abuse of power, and thus provides the

5    basis for a punitive damage award.

6                              **Prayer for Relief**

7         **WHEREFORE,** Pixler respectfully requests that this Court enter judgment

8    against Defendants, providing the following relief:

9

10        a.   Reinstatement in her role as Program Director at the OPG;

11        b.   Compensatory damages, exclusive of costs and interest against Defendants

12             Daniel Bergin, Chuck and Irene Stratton, Tim and Maureen Jackson, and

13             Henry Darwin, exclusive of costs and interest;

14        c.   Punitive damages against Defendants Daniel Bergin, Chuck and Irene

15             Stratton, Tim and Maureen Jackson, and Henry Darwin, exclusive of costs

16             and interest;

17        d.   An award of interest, costs, and reasonable attorneys' fees;

18        e.   Any and all other remedies provided pursuant to the ADA, Section 1983,

19             and Title VII;

20        f.   Such other and further relief as the Court deems appropriate.

21   ///

22   ///

23   ///

24

                                    22

1    RESPECTFULLY SUBMITTED this 29th day of May 2018.

2

3                                                    /s/ Kaitlyn Redfield-Ortiz
                                                     Lubin & Enoch, P.C.
4                                                    Attorney for Plaintiff

5                              **CERTIFICATE OF SERVICE**

6    Original of the foregoing
     Complaint filed this 29th
7    day of May, 2018, with:

8    Clerk of Superior Court
     201 West Jefferson Street
9    Phoenix, Arizona 85003

10

     /s/ Cristina Gallardo-Sanidad
11

12

13

14

15

16

17

18

19

20

21

22

23

24



1  LUBIN & ENOCH, P.C.
2  Nicholas J. Enoch
   State Bar No. 016473
3  Kaitlyn A. Redfield-Ortiz
   State Bar No. 030318
4  Stanley Lubin
   State Bar No. 003076
5  349 North Fourth Avenue
6  Phoenix, Arizona 85003-1505
7  Telephone: (602) 234-0008
   Facsimile: (602) 626-3586
8  Email: nick@lubinandenoch.com
9
   Attorneys for Plaintiffs
10

11         IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
12
              IN AND FOR THE COUNTY OF MARICOPA
13                                          CV 2018-00764
14
15  Larissa T. Pixler, a married )   Case No.:
    woman,                       )
16                               )   **CERTIFICATE OF COMPULSORY**
17              Plaintiff,       )   **ARBITRATION**
    v.                           )
18                               )
19  State of Arizona; Douglas A. )
    Ducey, in his official       )
20  capacity as Governor of the  )
    State of Arizona; Daniel     )
21  Bergin, in his official      )
22  capacity as the Director of  )
    the Arizona Department of    )
23  Gaming; Chuck Stratton, the  )
24  Assistant Director of Gaming )
    Compliance, in his individual)
25  capacity, and Irene Stratton,)
26  husband and wife; Tim        )
    Jackson, the Deputy Director )
27  of the Arizona Department of )
28  Gaming, in his individual    )

                              1

1  capacity, and Maureen T.         )
2  Jackson, husband and wife;       )
   Henry Darwin, the Chief          )
3  Operating Officer for            )
   Governor Douglas A. Ducey, in)
4  his individual capacity,         )
                                    )
5                                   )
                 Defendants.        )
6

7

8       The undersigned certifies that she knows the dollar

9  limits and any other limitations set forth by the local

10 rules of practice for the applicable superior court, and

11 further certifies that this case is not subject to

12 compulsory arbitration, as provided by Rules 72 through 77

13

14 of the Arizona Rules of Civil Procedure.

15      RESPECTFULLY SUBMITTED this 29th day of May, 2018.

16

17                      LUBIN & ENOCH, P.C.

18                      /s/ Kaitlyn Redfield-Ortiz
19                      Kaitlyn Redfield-Ortiz, Esq.
20                      Attorneys for Plaintiffs

21                **CERTIFICATE OF SERVICE**
22 Original of the foregoing
   Certificate filed this 29th
23 day of May, 2018, with:

24
   Clerk of Superior Court
25 201 West Jefferson Street
26 Phoenix, Arizona 85003

27 /s/ Cristina Gallardo-Sanidad

28

LUBIN & ENOCH, P.C.
Nicholas J. Enoch
State Bar No. 016473
Kaitlyn A. Redfield-Ortiz
State Bar No. 030318
Stanley Lubin
State Bar No. 003076
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email:    nick@lubinandenoch.com

Attorneys for Plaintiff

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Larissa T. Pixler, a married woman, | Case No. CV2018-007649 |
| v. | **PLAINTIFF'S JURY DEMAND** |
| State of Arizona, *et al.*, | |
| Defendants. | (Assigned to the Honorable Christopher A. Coury) |

Pursuant to Arizona Rule of Civil Procedure 38(b)(1),

Plaintiff, Larissa T. Pixler, by and through undersigned

counsel, hereby requests a trial by jury of all issues

triable of right by a jury in the above-entitled action.

RESPECTFULLY SUBMITTED this 3rd day of July, 2018.

LUBIN & ENOCH, P.C.


/s/ Nicholas J. Enoch
Nicholas J. Enoch, Esq.
Attorney for Plaintiff

///

///

///

///

///

RECEIVED
JUL 0 5 2018
LITTLER MENDELSON, P.C.
PHOENIX, AZ

## **CERTIFICATE OF SERVICE**

Original eFiled with the Clerk's ECF filing system this 3rd day of July 2018.

Copy of the foregoing Jury Demand sent via regular & e-mail [mogden@littler.com] this same date to:

Mark Ogden, Esq.
Littler Mendelson P.C.
2425 East Camelback Road, Ste. 900
Phoenix, Arizona  85016
Attorney for Defendants


/s/ Cristina Gallardo-Sanidad

F:\Law Offices\client directory\Fixler\Pleadings\2018-7-3 (6073-001) Jury Demand.wpd

2

RECEIVED
JUL 09 2018
LITTLER MENDELSON, P.C.
PHOENIX, AZ

1  LUBIN & ENOCH, P.C.
   Nicholas J. Enoch, State Bar No. 016473
2  Kaitlyn A. Redfield-Ortiz, State Bar No. 030318
   Stanley Lubin, State Bar No. 003076
3  349 North Fourth Avenue
   Phoenix, Arizona 85003-1505
4  Telephone: (602) 234-0008
   Facsimile: (602) 626-3586
5  E-mail: nick@lubinandenoch.com

6
   *Attorneys for Plaintiff*
7
                IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
8                   IN AND FOR THE COUNTY OF MARICOPA

9  Larissa T. Pixler, a married woman,          )
                                                )
10              Plaintiff,                       )    Case No.:  CV2018-007649
                                                )
11  vs.                                         )    **NOTICE OF ERRATUM TO**
                                                )    **INCLUDE EXHIBIT 1 TO**
12  State of Arizona, *et al.*,                 )    **COMPLAINT**
                                                )
13              Defendants.                      )    **(Assigned to the Honorable Christopher**
                                                )    **A. Coury)**
14  _____

15          Plaintiff, Larissa T. Pixler, by and through her attorneys, Lubin & Enoch, P.C.,

16  hereby submits a Notice of Erratum to include Exhibit 1 to the Complaint filed on May

17  30, 2018 and inadvertently not attached.

18          RESPECTFULLY SUBMITTED this 5th day of July 2018.

19
20                                          LUBIN & ENOCH, P.C.

21                                          /s/ Nicholas J. Enoch
                                            _____
22                                          Nicholas J. Enoch, Esq.
                                            Attorney for Plaintiff
23
24
                                            1

## <u>CERTIFICATE OF SERVICE</u>

Original eFiled with the Clerk's ECF filing system this 5th day of July 2018.

Copy of the foregoing Notice of Erratum sent via regular & e-mail [mogden@littler.com] this same date to:

Mark Ogden, Esq.
Littler Mendelson P.C.
2425 East Camelback Road, Ste. 900
Phoenix, Arizona  85016
Attorney for Defendants


/s/ Shana Battles

F:\Law Offices\client directory\Pixler\Pleadings\Complaint packet\DRAFT (6073-001) Notice of Erratum to Complaint.docx

2

# EXHIBIT 1

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 540-2017-00155 |

## Arizona Attorney General's Office, Civil Rights Division   and EEOC
State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Larissa Pixler** | **(480) 759-9175** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **3166 E. Desert Willow Rd., Phoenix, AZ 85048** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **STATE OF ARIZONA** | **15 - 100** | **(602) 771-4263** |

| Street Address | City, State and ZIP Code |
|---|---|
| **Department Of Gaming,  1110 W. Washington, Suite 450,  Phoenix, AZ 85007** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| | 07-25-2016 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On or about July 6, 1996, I was hired by Respondent.  Since 2014, I have been employed as Program Director,
Office of Problem Gambling (OPG) for Respondent.  While employed by Respondent, my work performance has
been exemplary with my latest written performance evaluation in May 2016 as "Exceeds Expectations" and the
highest numeric score obtained in more than 21 years of service.

In or about February 2016, I completed written evaluations of my staff (MAPs).  I rated Kathy Donner with an
overall score of "Meets Expectations" and "Needs Improvements" in Accountability and Customer Service.  My
supervisor, Deputy Director John Briney and Ryan Ruelas, HR Supervisor, reviewed the MAP and sent it to the
Department of Administration (ADOA) for further review.  ADOA suggested a few word changes and returned it
to Mr. Briney and Mr. Ruelas.  I incorporated the changes and the MAP was posted by the Department.  On or
about March 22, 2016, I was called into a meeting with Mr. Briney, Mr. Ruelas, and the Department Director, Dan
Bergin.  They presented me with a response from Ms. Donner regarding her "Needs Improvement" scores.
During the meeting, I was ordered to draft a reply to Ms. Donner's concerns with much specificity as possible.
I was also told to go through Ms. Donner's files to document my assertions regarding the MAP and to keep me

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Oct 18, 2016          *Larissa T Pixler* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 540-2017-00155 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

emotions out.  I emphasized to them that Ms. Donner's overall score was a "Meets Expectations" and Mr. Bergin expressed surprise that Ms. Donner had complained.  They informed me that Ms. Donner had filed an EEOC charging concerning her MAP; however I later learned it had not been filed until a month later in April 2016.

On or about March 30, 2016, I delivered my reply to Mr. Briney.  On or about April 1, 2016, Director. Bergin asked ADOA to open an investigation regarding harassment of female employees of the Department.  On or about April 4, 2016, I was informed I would need to speak with ADOA.  I asked Mr. Ruelas if it was regarding Ms. Donner and he informed me that it was not.

On or about April 5, 2016, I was interviewed by the investigator regarding conduct of Mr. Bergin and Mr. Briney, Chief of Government Policy, External Affairs Eric Sloan, and Mr. Ruelas.  I was questioned regarding Mr. Briney's drinking and inappropriate treatment of women at the workplace.

I was informed that a decision had been made by ADOA and the Department that there would be no amendment of Ms. Donner's MAP.  I also advised that in the future any directions given to Ms. Donner had to be documented and be very clear.  In addition, Ms. Donner's EEOC complaint was found to be without cause in just three weeks.

On or about April 12, 2016, I was given a "Memo of Concern" by Tim Jackson, Acting Deputy Director regarding the March 22, 2016 meeting where I was directed to prepare a draft reply to Ms. Donner's MAP response.  The "Memo" alleged I did not follow directions given during that meeting.  Mr. Jackson did not attend that meeting and Mr. Ruelas confirmed with me that the information in the "Memo" was not accurate.

After meeting with Mr. Jackson, I felt he continuously harassed me, scrutinized everything that I did and intimidated me.  I no longer felt safe and believed I was being subjected to a hostile work environment.

On or about April 13, 2016, I was informed during a Manager's meeting that Mr. Briney and Mr. Sloan were terminated as a result of the investigation.  On or about April 20, 2016, I requested a meeting with Mr. Bergin; however he declined and I was told to speak with Mr. Jackson; however my conflict was with Mr. Jackson.  Mr. Bergin finally agreed to meet with me and requested Deputy Director Rudy Casillas attend as well.  Mr. Bergin denied providing the false information contained in the "Memo" and insisted Mr. Jackson was present during the March 22, 2016 meeting.  I informed them I had followed the instructions exactly regarding the draft reply and it had been reviewed by ADOA and upper management.  Mr. Casillas shared with me his experience with EEOC complaints filed against him and that he understood this was a difficult issue.

On or about April 22, 2016, I was informed by Mr. Casillas the "Memo" was dismissed, but he would continue with his investigation of my complaints regarding the retaliatory and misogynistic behavior of Mr. Jackson.  I have yet to receive any report regarding my complaint.

On or about April 26, 2016, I met with the ADOA investigator and other managers regarding Ms. Donner's investigation.  I was given a development plan by the investigator to get through the situation.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  **SIGNATURE OF COMPLAINANT** |
| Oct 18, 2016 _____ *Larina J. Pyler* | |
| Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2017-00155 |

Arizona Attorney General's Office, Civil Rights Division
_State or local Agency, if any_

and EEOC

On or about July 25, 2016, I was called into a meeting with Chuck Stratton, Sylvia Hernandez, HR Shared Services Manager, and Mr. Ruelas. Mr. Stratton informed me that my services were no longer needed and I had 30 minutes to clean out my office. I worked for Respondent for 20 years and was not given notice or any reason for my termination. I asked Ms. Hernandez if I could resign and she told me emphatically "no" and that I was "fired".

I believe that other females have left Respondent as a result of harassment and the misogynistic behavior of senior male staff members. I have heard comments by employees at ASRS that they had seen a number of "retirement age" individuals being terminated who were similarly situated to me; whereas I loved my job and had no desire to leave. There were comments that the Governor wanted to reduce the number of state employees by 24%; therefore it appears the State has engaged in terminating older employees to achieve the Governor's desired employment target as expressed in his "scorecard".

I believe I have been subjected to discrimination because of my sex (female) and retaliated against in violation of Title VII of the Civil Rights Act of 1964 and because of my age (61) in violation of the Age Discrimination in Employment Act of 1967, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Oct 18, 2016     _Larissa T. Pegler_<br>Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Larissa Pixler<br>3166 E. Desert Willow Rd.<br>Phoenix, AZ 85048 | From: | Phoenix District Office<br>3300 North Central Ave<br>Suite 690<br>Phoenix, AZ 85012 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2017-00155 | Jeremy Yubeta,<br>Supervisory Investigator | (602) 640-5028 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Elizabeth Cadle,**
**District Director**

APR 1 6 2018
(Date Mailed)

cc:
Ryan Ruelas
HR Administrator
ARIZONA STATE OF
Department Of Gaming
1110 W. Washington, Suite 450
Phoenix, AZ 85007

Nicholas Enoch
ARBETMAN LAW OFFICE
107 E. MYRTLE AVE
Phoenix, AZ 85020

RECEIVED
JUL 0 9 2018
LITTLER MENDELSON, P.C.
PHOENIX, AZ

```
 1 │ LUBIN & ENOCH, P.C.
   │ Nicholas J. Enoch
 2 │ State Bar No. 016473
   │ Kaitlyn A. Redfield-Ortiz
 3 │ State Bar No. 030318
   │ Stanley Lubin
 4 │ State Bar No. 003076
   │ 349 North Fourth Avenue
 5 │ Phoenix, Arizona 85003-1505
   │ Telephone: (602) 234-0008
 6 │ Facsimile: (602) 626-3586
   │ Email:   nick@lubinandenoch.com
 7 │
   │ Attorneys for Plaintiff
 8 │
```

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Larissa T. Pixler, a married woman, | Case No. CV2018-007649 |
| v. | **PLAINTIFF'S OFFER OF JUDGMENT #1** |
| State of Arizona, *et al.*, | (Assigned to the Honorable Christopher A. Coury) |
| Defendants. | |

**TO: Defendants State of Arizona; Douglas A. Ducey, in his official capacity as Governor of the State of Arizona; Daniel Bergin, in his official capacity as the Director of the Arizona Department of Gaming; Chuck Stratton, the Assistant Director of Gaming Compliance, in his individual capacity, and Irene Stratton, husband and wife; Tim Jackson, the Deputy Director of the Arizona Department of Gaming, in his individual capacity, and Maureen T. Jackson, husband and wife; Henry Darwin, the Chief Operating Officer for Governor Douglas A. Ducey, in his individual capacity (collectively "the Defendants") and their attorneys.**

Pursuant to Arizona Rule of Civil Procedure ("Rule") 68 Plaintiff, Larissa T. Pixler ("Pixler"), hereby offers to take judgment in her favor and against the Defendants for the sum of one-million, three-hundred, eighty thousand and five dollars ($1,380,005.00), such judgment is inclusive of all damages, taxable costs and interest sought in connection with Pixler's claims against the Defendants, but is

1  exclusive of any attorneys' fees incurred and sought by
2  Pixler in this action.

3  This sum shall be apportioned among the Defendants as
4  follows:

5  1.   State of Arizona ➜ one-million, three-hundred and
6  eighty thousand dollars ($1,380,000.00);

7  2.   Douglas A. Ducey, in his official capacity as
8  Governor of the State of Arizona ➜ one dollar ($1.00);

9  3.   Daniel Bergin, in his official capacity as the
10 Director of the Arizona Department of Gaming ➜ one dollar
11 ($1.00);

12 4.   Chuck Stratton, the Assistant Director of Gaming
13 Compliance, in his individual capacity, and Irene Stratton,
14 husband and wife ➜ one dollar ($1.00);

15 5.   Tim Jackson, the Deputy Director of the Arizona
16 Department of Gaming, in his individual capacity, and
17 Maureen T. Jackson, husband and wife ➜ one dollar ($1.00);
18 and

19 6.   Henry Darwin, the Chief Operating Officer for
20 Governor Douglas A. Ducey, in his individual capacity ➜ one
21 dollar ($1.00).

22 Pursuant to Rule 68(f)(2), this offer is conditioned
23 upon acceptance by all Defendants.

24 DATED this 3rd day of July, 2018.

25                          LUBIN & ENOCH, P.C.

26                          /s/ Nicholas J. Enoch
                            Nicholas J. Enoch, Esq.
27                          Attorney for Plaintiff

28                                    2

1    **CERTIFICATE OF SERVICE**

2        Original of the foregoing Offer of Judgment sent via
     regular & e-mail [mogden@littler.com] this 3rd day of July,
3    2018 to:

4    Mark Ogden, Esq.
     Littler Mendelson P.C.
5    2425 East Camelback Road, Ste. 900
     Phoenix, Arizona  85016
6    Attorney for Defendants

7

8    /s/ Cristina Gallardo-Sanidad

9    F:\Law Offices\client directory\Pixler\Pleadings\2018-7-4 (6073-001) Offer of Judgment.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    3

LUBIN & ENOCH, P.C.
Nicholas J. Enoch, State Bar No. 016473
Kaitlyn A. Redfield-Ortiz, State Bar No. 030318
Stanley Lubin, State Bar No. 003076
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
E-mail: nick@lubinandenoch.com

*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Larissa T. Pixler, a married woman, | ) |
| | ) |
| Plaintiff, | ) Case No.:  CV2018-007649 |
| | ) |
| vs. | ) **NOTICE OF FILING FIRST** |
| | ) **AMENDED COMPLAINT** |
| State of Arizona, *et al.*, | ) |
| | ) **(Assigned to the Honorable Christopher** |
| Defendants. | ) **A. Coury)** |
| | ) |

Notice is hereby given that Plaintiff filed her First Amended Complaint, in the

form attached hereto, on the date set forth below. Plaintiff hereby certifies that

Defendants have consented, in writing, to the filing of the First Amended Complaint

RESPECTFULLY SUBMITTED this 24th day of August 2018.


LUBIN & ENOCH, P.C.


/s/ Nicholas J. Enoch
Nicholas J. Enoch, Esq.
Attorney for Plaintiff

1

1

2

## **<u>CERTIFICATE OF SERVICE</u>**

3

Original eFiled with the Clerk's ECF filing system this 5th day of July 2018.

4

Copy of the foregoing Notice of Filing First Amended Complaint sent via regular & e-mail [mogden@littler.com] this same date to:

5

6

Mark Ogden, Esq.
Littler Mendelson P.C.
2425 East Camelback Road, Ste. 900
Phoenix, Arizona  85016
Attorney for Defendants

7

8

/s/ Shana Battles

9

10

F:\Law Offices\client directory\Pixler\Pleadings\Complaint packet\2018-8-24 (6073-001) Notice of Filing First Amended Complaint.docx

11

12

13

14

15

16

17

18

19

20

21

22

23

24

2

LUBIN & ENOCH, P.C.
Nicholas J. Enoch, State Bar No. 016473
Kaitlyn A. Redfield-Ortiz, State Bar No. 030318
Stanley Lubin, State Bar No. 003076
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
E-mail: nick@lubinandenoch.com

*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| Larissa T. Pixler, a married woman, | Case No.: CV2018-007649 |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | |
| State of Arizona; Daniel Bergin, in his official capacity as the Director of the Arizona Department of Gaming; Chuck Stratton, the Assistant Director of Gaming Compliance, in his individual capacity, and Irene Stratton, husband and wife; Tim Jackson, the Deputy Director of the Arizona Department of Gaming, in his individual capacity, and Maureen T. Jackson, husband and wife; Henry Darwin, the Chief Operating Officer for Governor Douglas A. Ducey, in his individual capacity, | **(Assigned to the Honorable Christopher A. Coury)** |
| Defendants. | |

1

Plaintiff, Larissa T. Pixler, by and through her attorneys, Lubin & Enoch, P.C., brings this action pursuant to the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1983.

## Introduction

1.     This case concerns the wrongful and illegal termination of Larissa T. Pixler ("Pixler"), a twenty-year veteran of the Office of Problem Gambling, a division of the Arizona Department of Gaming.  In her final assignment, Pixler served as the Office of Problem Gambling Program Director, that division's top role.

2.     Over her tenure, Pixler's numerous superiors described her as "a credible supervisor and leader," "extremely valuable," an "excellent representative for this agency," "absolutely committed to providing outstanding customer service," and performing "at a high level in all aspects of her job."  In her most recent evaluation, Pixler "exceeded expectations" and earned her highest-ever numeric score.

3.     On July 25, 2016, Defendants abruptly terminated Pixler, unexpectedly ending her career at the age of 61 years old.

4.     Three months prior to her termination, in April 2016, Pixler voluntarily participated in an investigation conducted by the Arizona Department of Administration ("ADOA") into sexual harassment committed by her bosses, four senior members of the Arizona Department of Gaming, which resulted in the termination of two of those staff.

5.     Seven days after her participation, Defendants took disciplinary action against Pixler, the first discipline of her entire career.  Three months later, shortly after

2

her twenty-year anniversary with the Division and just months after her highest-ever performance evaluation, Defendants terminated Pixler.

6.     Pixler is one of over 1,700 state employees fired in 2015 and 2016 by the Ducey administration,[1] whose rumored goal is to eliminate 24% of state employees.  The Arizona Republic has noted that most of those fired, like Pixler, are female minorities, and 64% are over the age of 40.[2]

7.     This case is about the untimely and unjust end to the career of a committed, hardworking civil servant, whose participation in the state's investigation of her superiors' abusive and wasteful behaviors led to retaliation, reprisal, and ruin.

**Jurisdiction and Venue**

8.     This Court has subject matter jurisdiction over this case pursuant to A.R.S. § 12-123.

9.     Venue is proper in this Court pursuant to A.R.S. § 12-401.

**Parties**

10.     Larissa Pixler is a twenty-year veteran of the Office of Problem Gambling ("OPG" or "the Office"), a division within the Arizona Department of Gaming ("ADG"). She was appointed the OPG Program Director in May 2014.

---

[1]   *See* https://www.azcentral.com/story/news/politics/arizona/2017/02/01/arizona-rash-of-state-firings-slows-down-amid-tighter-oversight-imposed-by-governor-ducey/97158378/ (last accessed March 5, 2018).
[2]   *See* https://www.azcentral.com/story/news/local/arizona-investigations/2016/10/17/state-firings-increasing-under-gov-doug-duceys-administration/91678058/ (last accessed March 5, 2018).

3

11.     Pixler brings this lawsuit against the State of Arizona, which is named as a defendant for Pixler's claims under Title VII and the Age Discrimination in Employment Act.

12.     Daniel Bergin is the Director of the ADG.  He is named as a defendant for Pixler's § 1983 claim.  He is sued in his official capacity for injunctive relief and in his personal capacity for compensatory and punitive relief under *Ex Parte Young*.  Arizona statutes do not authorize the Director of the ADG to sue or be sued, *see* Federal Rule of Civil Procedure 17(b)(3), but *Ex Parte Young*, which "holds, as a matter of federal common law, that any state officer who allegedly violates federal law may be sued for injunctive relief in federal court, . . . appears to create an exception to Rule 17(b)'s requirement that a state officer's amenability to suit be determined by state law."  *Tohono O'odham Nation v. Ducey*, 174 F.Supp.3d 1194, 1200 (D. Ariz. 2016).

13.     Chuck Stratton was the Assistant Director of Gaming Compliance at the Arizona Department of Gaming.  He is named in his individual capacity for compensatory relief for Pixler's § 1983 claim.  Chuck Stratton and Irene Stratton are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona.  The acts engaged in and the omissions made by the Strattons were performed as agents and for the benefit of the marital community.

14.     Tim Jackson was the Deputy Director of the Arizona Department of Gaming.  He is named in his individual capacity for compensatory relief for Pixler's §

4

1983 claim.  Tim Jackson and Maureen T. Jackson are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona.  The acts engaged in and the omissions made by the Jacksons were performed as agents and for the benefit of the marital community.

15.     Henry Darwin ("Darwin") was the Chief Operating Officer for Governor Ducey.  Darwin is responsible for reviewing all terminations in state government.[3]  He is named in his individual capacity for compensatory relief for Pixler's § 1983 claim.

### General Allegations

#### *Pixler's Professional Background*

16.     Pixler came to the Arizona Department of Gaming in 1996.  She began as an Administrative Assistant, and worked her way up to the highest role in the Office of Problem Gambling.  During her twenty-year tenure, she served in numerous positions, including Certified Intelligence Analyst and Gambling Self-Exclusion Administrator.  In May 2014, she was appointed the OPG Program Director, in which role she oversaw a $2 million budget and five employees.

17.     In this role, Pixler earned excellent evaluations.  Each year, she was ranked "Exceeds Expectations," and her numeric score increased from 2.67 out of 3.0 during her first year as Program Director to 2.78 in her final year.

---

[3]   "'I personally review every case, and I talk to the HR manager in every case that warrants termination,' Darwin said. 'They were justified.'" *See* https://www.azcentral.com/story/news/politics/arizona/2017/02/01/arizona-rash-of-state-firings-slows-down-amid-tighter-oversight-imposed-by-governor-ducey/97158378/ (last accessed March 5, 2018).

18.     In her three years as Program Director, Pixler was reviewed by three different superiors, including Leslie Welch, John Briney, and Daniel Bergin.  All of them lauded her work as "outstanding," "exceptional," "proactive and self-motivated."  Each commended her "strong written and verbal communication skills," her "commit[ment] to her responsibilities," and her ability to "actively encourage[ ] a respectful and open exchange of ideas and viewpoints."

19.     One supervisor commented that "Larissa is known nationally for her contributions to problem gambling self-exclusion programs."  In 2015, Pixler was appointed to a national board, the Association of Problem Gambling Service Administrators.

20.     Pixler adored her job, and did not intend to retire for some time.  In fact, in the same year she was terminated, she completed a Masters of Administration in Public Management through Northern Arizona University.

_The ADOA Investigation into Sexual Harassment in the Arizona Department of Gaming_

21.     For years, the upper echelons of the ADG have been plagued by sexual harassment and misconduct.  During Pixler's tenure, she watched as her bosses harassed and abused numerous female subordinates.  The most egregious offenders included Pixler's direct supervisor, John Briney ("Briney"), the Deputy Director of the Arizona Department of Gaming, and executive staff member, Eric Sloan ("Sloan"), Chief of Public Policy and Governmental Affairs.  Briney and Sloan reported to Daniel Bergin ("Bergin"), the Director of the ADG.

6

22.     Briney and Sloan made inappropriate sexual jokes, sent unsolicited sexual text messages, and made degrading remarks about their female employees' appearance and age.  They also bullied women in their professional capacities by, for instance, loudly debating which employee should be fired, or by requesting a certain assignment, and then when the employee delivered the assignment, falsely claiming that he had instructed her to do something else entirely and accusing her of intentionally defying him.

23.     Many women complained, quit, or were transferred away from the harassing male supervisors, but to Pixler's knowledge, no actions were ever taken against the men.  When employees attempted to complain about Briney's and Sloan's behavior to Bergin, they were physically prevented from doing so by Briney and Sloan, who would stand guard outside Bergin's office or enter Bergin's office with the complaining employee, preventing her from speaking freely.  Bergin was also friends with Briney and Sloan, and often engaged in fraternizing behavior with them, such as playing guitar and video games in the office, misusing their phones to disrupt office meetings, and sharing private jokes.

24.     For Pixler, these issues came to a tipping point in early 2016.  In early 2015, Kristen Micurescu, Pixler's friend and colleague, began telling Pixler about escalating abusive behavior by Briney.  Micurescu had complained through OPG's channels but received no relief.  In January 2016, Micurescu learned that she was pregnant.  Briney's ongoing harassment caused her extreme stress, and she was suffering from other health concerns, which combined, led her to fear losing her pregnancy.  She

decided to complain to Jan Plank ("Plank") with the Arizona Department of Administration ("ADOA").  Two of Pixler's staff accompanied Micurescu.  Upon their return from the ADOA, the staff members requested that Pixler be an additional witness, as they believed her testimony would carry significant weight and credibility.  Pixler agreed.

### *Pixler's Evaluation of Her Employee, Kathy Donner & Retaliation Against Pixler for Participation in the ADOA Investigation*

25.     As the above events were unfolding, Pixler was engaged in the difficult process of evaluating an underperforming employee.

26.     In January, state supervisors are required to complete annual performance evaluations, known as "Managing Accountability and Performance" or the "MAP evaluation."

27.     For some time, Pixler had been struggling to manage one of her employees, Kathy Donner, whose performance had been substandard.  Pixler had sought the advice of Briney and Ryan Ruelas ("Ruelas"), the OPG Human Resources Supervisor, on how best to handle Donner's disrespectful demeanor, failure to complete requested assignments, and frequent absences.

28.     In January 2016, Pixler completed Donner's MAP, ranking her as "Meets Expectations," and specifically detailing Donner's strengths and weaknesses.  Pixler sent the evaluation to Briney for his approval.  Briney forwarded it to Ruelas for review, and Ruelas sent it to the ADOA for approval.  The ADOA approved the evaluation with a few

minor changes.  Pixler made the changes and resubmitted the evaluation to Briney.

Briney approved the evaluation, and it was released to Donner.

29.     On March 22, 2016, Pixler was called into a meeting with Briney, Ruelas, and Bergin.  They informed her that Donner had filed an EEOC complaint about her evaluation, along with a lengthy rebuttal to it.  Bergin suggested just increasing Donner's MAP evaluation score to avoid conflict, but Pixler declined, explaining that Donner had received an overall "Meets Expectations," and that she had truthfully and constructively outlined the inadequacies that led to the "Needs Improvement" score on some of the MAP's subparts.  Briney asked Pixler to draft a response to Donner's rebuttal by March 30, 2016.  Briney said that he would review the response with Pixler to ensure it was ready to submit to Donner.  Pixler agreed.

30.     On March 30, 2016, Pixler submitted her ten-page response.  Briney flipped through it, made a joke about the "light reading" he had in front of him, and told Pixler that it "looked good."  Present at the time in Briney's office was Tim Jackson ("Jackson"), the ADG Office of Continuous Improvement Administrator.

31.     On April 4, 2016, before Briney could review the response with Pixler, as he had promised, he was placed on administrative leave.  Pixler believed this was a result of Micurescu's complaint.  On that same day, Bergin announced to OPG that Jackson had been named the temporary Deputy Director of ADG, and had "full authority to hire and fire."  Bergin, clearly angry that someone had complained about Briney and Sloan, angrily emphasized the words "*and fire*."

9

32.     On April 5, 2016, Pixler was called to meet with Plank, ADOA's Shared Services Manager for Human Resources.  Pixler anticipated that Plank's questions would concern Micurescu's complaint against Briney, on whose behalf she had volunteered to serve as a witness.  However, she learned that the investigation was broader, and concerned sexual harassment and other misconduct by her multiple superiors, including Briney, Sloan, Bergin, and Ruelas, committed against numerous women.  Pixler testified truthfully about the men's behavior.

33.     One week later, on April 12, 2016, Pixler was disciplined by the same individuals against whom she had testified.  Ruelas and Jackson summoned her to a meeting, and presented her with a "Memo of Concern."  Jackson angrily accused Pixler of not following Bergin's and Briney's instructions regarding the March 30 response she had submitted to Donner's rebuttal of her MAP.  Pixler, baffled, recounted the exact instructions she had received from Briney and Bergin.  Ruelas corroborated Pixler's account of Bergin's and Briney's instructions.  Pixler then explained that she spent a great deal of time drafting the document, carefully explaining and substantiating her concerns about Donner.  She explained that she had plans to review and edit the document with Briney, but that he was placed on administrative leave before he had had the chance to do so.

34.     Nevertheless, Jackson continued to accuse Pixler of insubordination, taking issue with the wording in her response.   Pixler again explained that she had been directed by Briney to write a rough draft, and that she and Briney had plans to finesse it together.

35.     During the course of the meeting, Jackson revealed that Pixler's draft document had been inadvertently released to Donner as a part of a public records request. He also made numerous threatening references to how Briney would respond to Pixler when he returned.  And although Pixler remained calm and respectful throughout the meeting, Jackson patronized and shamed her, demanding that she never address him informally or directly, instructions Pixler is quite sure she would never have been subjected to if she were male.

36.     The following day, April 13, 2016, Briney and Sloan were fired as a result of the ADOA investigation.  Bergin informed the ADG managers, including Pixler, that in the future, staff should address their personnel concerns to him, rather than to the ADOA.

37.     Bergin instructed that Jackson would continue to serve as Acting Deputy Director of ADG, and was now Pixler's immediate supervisor.

38.     On April 20, 2016, Pixler met with Bergin to protest the Memo of Concern ("the Memo") issued to her by Jackson.  Bergin met with Pixler, along with Rudy Casillas ("Casillas"), the Acting Director of the Arizona Department of Racing.  Bergin began the meeting by saying repeatedly that he "recused" himself from any decision-making.  Pixler asked if he had read the Memo, and Bergin replied that he had not, saying again that he wanted to be "recused" from the matter.  Pixler stated that she felt that Jackson's Memo was retaliation for her participation in the ADOA investigation of her terminated boss, Briney, and Chief of Public Policy, Sloan.  She explained that Jackson, a

friend of Briney and Sloan, seemed to want to punish and intimidate Pixler for having spoken out against them during the ADOA investigation.  She further explained that she had taken extraordinary care to respond to Donner's rebuttal in a substantive, constructive, and respectful way, and had followed Briney's instructions to the letter. Bergin responded that he would assign Casillas to investigate Pixler's claim of retaliation by Jackson.

39.     On April 22, 2016, Casillas came to Pixler's office and told her "not to worry" about the Memo, because it had been dismissed.  He promised to continue investigating Pixler's claims of retaliation and discriminatory treatment by Jackson.

40.     On or about May 19, 2016, three weeks after filing her EEOC complaint, Donner's charge was dismissed by the EEOC.

### *Pixler's Termination*

41.     During May 2016, the waters seemed to calm for Pixler.  Jackson's Memo of Concern regarding her had been dropped, and the EEOC dismissed Donner's charge. Bergin removed OPG from Jackson's responsibility, and assigned its supervision to Acting Deputy Director, Chuck Stratton ("Stratton").  Moreover, Pixler was having considerable success at work.  For example, she negotiated a contract with the OPG's IT service that saved the OPG $21,000.

42.     On July 12, 2016, at the ADG quarterly staff meeting, Pixler was recognized for twenty years with the agency.

43.     On July 25, 2016, Stratton called Pixler to his office.  Also present were Ryan Ruelas and ADOA Shared Services Representative, Sylvia Hernandez.  As she sat down, Stratton said, "Larissa, we called you here to tell you your services are no longer needed."  She asked whether she was being terminated for Donner's EEOC charge. Stratton replied only, "Your services are no longer needed."  She was given thirty minutes to pack and leave.

### *Pixler's Visit to the Arizona State Retirement System*

44.     On August 4, 2016, Pixler met with representatives from the Arizona State Retirement System ("ASRS") to file her retirement papers.  As she was leaving the office, the ASRS receptionist struck up a conversation with Pixler, and Pixler eventually revealed that she had been terminated.

45.     The ASRS receptionist commented that the office had been exceptionally busy lately with people who had been terminated.  The receptionist stated that it was due to Governor Ducey's LEAN initiative, through which there was a directive to downsize state government by 24%.  The receptionist stated that the terminated employees who had flooded her office recently were all nearing retirement age.

46.     The receptionist's story is corroborated by a series of investigative pieces written by The Arizona Republic, [4] which reported that the Ducey administration fired 1,700 people in 2015 and 2016, and that "older workers, women and minorities appeared

---

[4]     *See* https://www.azcentral.com/story/news/politics/arizona/2017/02/01/arizona-rash-of-state-firings-slows-down-amid-tighter-oversight-imposed-by-governor-ducey/97158378/ (last accessed March 10, 2018).

to be the targets of those firings," leading the Governor to intervene.  The Arizona Republic reported that although state agencies reported their firings were due to employees' "behavior," the newspaper had learned that at least 200 people allegedly fired for that reason had also received merit bonuses for outstanding service.  As a result of the investigation, the state implemented a hotline for terminated state employees to call if they feel they were terminated for discriminatory reasons, and rehired dozens of workers.

47.      The state claims that it closely scrutinizes each termination.  Henry Darwin, Governor Ducey's Chief Operating Officer, was quoted in The Arizona Republic stating:  "'I personally review every case, and I talk to the HR manager in every case that warrants termination,' Darwin said. 'They were justified.'"[5]

48.      Pixler filed a timely charge of discrimination with the EEOC, alleging discrimination under Title VII and the ADEA.  She received a right-to-sue notice on April 16, 2018.  *See* Exhibit 1.

**First Claim for Relief**

**(Against the State of Arizona)**

***Retaliation in Violation of Title VII of the Civil Rights Act of 1964***

49.      It is an unlawful employment practice to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any

---

[5]       *Id.*

14

manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

50.     Under Title VII, a plaintiff establishes a prima facie case of retaliation by proving that (1) she engaged in an activity protected under Title VII; (2) the employer subjected her to an adverse employment action; and (3) there was a causal link between the protected activity and the employer's action.

51.     Participation in an informal process is a protected activity under Title VII. *Passantino v. Johnson & Johnson Consumer Prods., Inc.* 212 F.3d 493, 506 (9th Cir. 2000).  Termination is an adverse employment action.  The third element of the prima facie case requires that the protected activity was a "but-for" cause of the employer's adverse action.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). Pixler's participation in the investigation that resulted in her superiors' termination is the but-for cause of her termination.

## Second Claim for Relief

### (Against the State of Arizona)

### *Violation of the Age Discrimination in Employment Act*

52.     The ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).

53.     Although the text of the ADEA makes the law applicable to state employees, *see* 29 U.S.C. § 630(b), the Supreme Court ruled that Congress did not validly abrogate the States' sovereign immunity to suit in passing the ADEA.  *Kimel v.*

1   *Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000).  Thus, in practice, state employees cannot

2   sue under the ADEA.

3       54.     However, if a state opens its courts to suits against the state on state law

4   claims, it cannot assert sovereign immunity as a jurisdictional defense to hear comparable

5   claims against the state brought under federal law.  *Howlett v. Rose*, 496 U.S. 356, 367-

6   75 (1990) (holding that a state court cannot apply a state law sovereign immunity defense

7   to refuse a federal claim, because state law permitted similar claims, and "[t]he

8   Supremacy Clause makes [federal] laws the supreme Law of the Land, and charges state

9   courts with a coordinate responsibility to enforce that law according to their regular

10  modes of procedure"); *see also Erickson v. Bd. of Governors*, 207 F.3d 945, 952 (7th Cir.

11  2000) (applying *Howlett* to an employment discrimination claim, stating that "[Plaintiff]

12  may repair to Illinois court—for although states may implement a blanket rule of

13  sovereign immunity . . . Illinois has not done this.  Having opened its courts to claims

14  based on state law, including its own prohibition of disability discrimination by units of

15  state government . . . Illinois may not exclude claims based on federal law.").

16      55.     Arizona does not have a blanket rule of sovereign immunity.  Moreover,

17  the Arizona Civil Rights Act permits state law age discrimination claims to be brought

18  against a state employer.  *See* A.R.S. § 41-1461(5)-(6).  Thus, the state cannot assert

19  sovereign immunity under *Kimel* as a defense to Ms. Pixler's ADEA claim.

20      56.     Under the ADEA, a plaintiff establishes a prima facie case of age

21  discrimination by proving that (1) the defendant discharged the plaintiff; (2) the plaintiff

16

was 40 years of age or older at the time of discharge; and (3) the defendant discharged the plaintiff because of her age.

57.     Pixler was 61 years of age at the time of her termination.  She is one of thousands of recently-terminated state employees who happen to be female, minorities, and over the age of 40, who were terminated as part of the Governor's efforts to drastically downsize state government.  She asserts that she was terminated because of her age.

### Third Claim For Relief

**(Against Daniel Bergin, Chuck and Irene Stratton, Tim and Maureen Jackson, and Henry Darwin)**

*Violation of 42 U.S.C. § 1983 by Retaliation for Pixler's Exercise of Her First Amendment Rights*

58.     "The First Amendment's guarantee of freedom of speech protects government employees from termination *because of* their speech on matters of public concern."  *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996).  Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the Constitution.  *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984).

59.     "A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights."  *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).  To establish a claim for retaliation for

17

protected speech under the First Amendment, Pixler must prove the following elements: (1) the speech was on a matter of public concern; (2) Pixler spoke as a private citizen and not as part of her official duties as a public employee; (3) Ms. Pixler's speech was a substantial or motivating factor for her termination.  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

60.     Pixler spoke on a matter of public concern when she participated in an investigatory interview conducted by the Arizona Department of Administration ("ADOA") regarding inappropriate office behavior, including sexual harassment, by Eric Sloan, Ryan Ruelas, John Briney, and Dan Bergin. *Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006) (finding that a correctional officer's statements about internal sexual misconduct, made in conjunction with an investigation conducted by a state supervisory office, were on a matter of public concern); *Tindal v. Montgomery County Comm'n*, 32 F.3d 1535, 1540 (11th Cir. 1994) (holding that testimony regarding sexual harassment in sheriff's office involved matter of public concern, in part because employee was speaking on behalf of others who had been harassed, not on behalf of her own private claim); *Marshall v. Allen,* 984 F.2d 787, 796 (7th Cir.1993) (male co-worker's verbal support for victims of sexual harassment constituted speech touching upon a public concern).

61.     Pixler spoke as a private citizen.  "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'"  *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009).  Pixler had no official

duty to complain about her superiors' misconduct and sexual harassment of others.  In

fact, she volunteered to do so.  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1075 (9th Cir. 2013)

("When an employee prepares a routine report, pursuant to normal departmental

procedure, about a particular incident or occurrence, the employee's preparation of that

report is typically within his job duties . . . By contrast, if a public employee raises within

the department broad concerns about corruption or systemic abuse, it is unlikely that such

complaints can reasonably be classified as being within the job duties of an average

public employee."); *Freitag*, 468 F.3d at 545 (holding that "[i]t was certainly not part of

[plaintiff's] official duties to complain to . . . [a supervisory state agency]," reasoning that

the "right to complain . . . to an independent state agency is guaranteed to any citizen in a

democratic society regardless of his status as a public employee.").  And, the

investigation she participated in was conducted by an external supervisory agency, the

ADOA, which is outside Ms. Pixler's chain of command within the OPG and ADG.

*Dahlia*, 735 F.3d at 1074 ("When a public employee communicates with individuals or

entities outside of his chain of command, it is unlikely that he is speaking pursuant to his

duties.").  In fact, the ADOA Employee Handbook specifically instructs employees to

make complaints of discrimination *inside* their agencies.

62.     Additionally, Pixler's termination and the mistreatment she endured after

participating in the ADOA investigation indicates that her speech fell outside of her

professional duties.  *Dahlia*, 735 F.3d at 1075 ("[T]he fact that an employee is threatened

or harassed by his superiors for engaging in a particular type of speech provides strong

evidence that the act of speech was not, as a "practical" matter, within the employee's job

duties notwithstanding any suggestions to the contrary in the employee's formal job

description.").  After the investigation, Ms. Pixler was among a group of employees

castigated by Dan Bergin for complaining to the ADOA.

<em>Prospective Relief for Section 1983 Violation</em>

63.    "Although sovereign immunity bars money damages and other

retrospective relief against a state or instrumentality of a state, it does not bar claims

seeking prospective injunctive relief against state officials to remedy a state's ongoing

violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867

(9th Cir. 2016) (citing *Ex Parte Young*, 209 U.S. 123, 149-56 (1908).

64.    The prospective relief permitted under an *Ex Parte Young* action includes

reinstatement.  *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 842 (9th Cir. 1997)

("[R]einstatement is a legitimate request for prospective injunctive relief.").

<em>Compensatory Relief for Section 1983 Violation</em>

65.    Pixler is entitled to seek recovery from Bergin, the Jacksons, the Strattons,

and Darwin, each in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 31 (1991).

A government official may be found personally liable if the plaintiff can demonstrate that

the official caused the alleged constitutional injury.  *Kentucky v. Graham*, 473 U.S. 159,

166-67 (1985).  The Eleventh Amendment does not bar suits seeking damages against

state officials in their personal capacity.  *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

66.     These officials are not entitled to qualified immunity.  To determine whether a government official is entitled to qualified immunity, the court must consider (1) whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right;" and (2) whether the right was clearly established at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Terminating Pixler for her speech, as a citizen, on a matter of public concern—her superiors' sexual misconduct—violates her clearly established First Amendment rights.  *See Eng v. Cooley*, 552 F.3d 1062, 1076 (2009) (internal quotation marks and citations omitted) ("There could be no confusion however, that when [plaintiff] commented upon matters of public concern as a citizen and not pursuant to his job responsibilities, his speech was protected by the First Amendment—that rule had long been the law of the land.).

*Punitive Damages for Section 1983 Claims*

67.     Punitive damages may be awarded in section 1983 cases against governmental officials acting in their individual capacities.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  A jury may award punitive damages when a defendant's conduct is "malicious, wanton, or oppressive" or when it "involved a reckless or callous indifference to the constitutional rights of others."  *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).  An act may be "oppressive" and trigger a punitive damages award "if done in a manner which injures or damages or otherwise violates the rights of

21

another person with unnecessary harshness or severity as by misuse or abuse of authority of power." *Id.* at 809.

68.     Terminating Pixler in retaliation for her participation in an investigation into the misconduct of her superiors is plainly an abuse of power, and thus provides the basis for a punitive damage award.

### Prayer for Relief

**WHEREFORE,** Pixler respectfully requests that this Court enter judgment against Defendants, providing the following relief:

    a.   Reinstatement in her role as Program Director at the OPG;

    b.   Compensatory damages, exclusive of costs and interest against Defendants Daniel Bergin, Chuck and Irene Stratton, Tim and Maureen Jackson, and Henry Darwin, exclusive of costs and interest;

    c.   Punitive damages against Defendants Daniel Bergin, Chuck and Irene Stratton, Tim and Maureen Jackson, and Henry Darwin, exclusive of costs and interest;

    d.   An award of interest, costs, and reasonable attorneys' fees;

    e.   Any and all other remedies provided pursuant to the ADA, Section 1983, and Title VII;

    f.   Such other and further relief as the Court deems appropriate.

///

///

22

RESPECTFULLY SUBMITTED this 24th day of August 2018.

/s/ Kaitlyn Redfield-Ortiz
Lubin & Enoch, P.C.
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

Original of the foregoing
First Amended Complaint filed this 24th
day of August, 2018, with:

Clerk of Superior Court
201 West Jefferson Street
Phoenix, Arizona 85003

/s/ Cristina Gallardo-Sanidad

23

# EXHIBIT 1

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [ ] FEPA | |
| [X] EEOC | 540-2017-00155 |

**Arizona Attorney General's Office, Civil Rights Division** and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Larissa Pixler** | (480) 759-9175 | |

| Street Address | City, State and ZIP Code |
|---|---|
| **3166 E. Desert Willow Rd., Phoenix, AZ 85048** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **STATE OF ARIZONA** | 15 - 100 | (602) 771-4263 |

| Street Address | City, State and ZIP Code |
|---|---|
| **Department Of Gaming, 1110 W. Washington, Suite 450, Phoenix, AZ 85007** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [X] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                    Latest
07-25-2016

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On or about July 6, 1996, I was hired by Respondent. Since 2014, I have been employed as Program Director, Office of Problem Gambling (OPG) for Respondent. While employed by Respondent, my work performance has been exemplary with my latest written performance evaluation in May 2016 as "Exceeds Expectations" and the highest numeric score obtained in more than 21 years of service.

In or about February 2016, I completed written evaluations of my staff (MAPs). I rated Kathy Donner with an overall score of "Meets Expectations" and "Needs Improvements" in Accountability and Customer Service. My supervisor, Deputy Director John Briney and Ryan Ruelas, HR Supervisor, reviewed the MAP and sent it to the Department of Administration (ADOA) for further review. ADOA suggested a few word changes and returned it to Mr. Briney and Mr. Ruelas. I incorporated the changes and the MAP was posted by the Department. On or about March 22, 2016, I was called into a meeting with Mr. Briney, Mr. Ruelas, and the Department Director, Dan Bergin. They presented me with a response from Ms. Donner regarding her "Needs improvement" scores. During the meeting, I was ordered to draft a reply to Ms. Donner's concerns with much specificity as possible. I was also told to go through Ms. Donner's files to document my assertions regarding the MAP and to keep my

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Oct 18, 2016 *(signature)* Larissa T Pixler | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 540-2017-00155 |

**Arizona Attorney General's Office, Civil Rights Division** and EEOC

*State or local Agency, if any*

emotions out. I emphasized to them that Ms. Donner's overall score was a "Meets Expectations" and Mr. Bergin expressed surprise that Ms. Donner had complained. They informed me that Ms. Donner had filed an EEOC charging concerning her MAP; however I later learned it had not been filed until a month later in April 2016.

On or about March 30, 2016, I delivered my reply to Mr. Briney. On or about April 1, 2016, Director, Bergin asked ADOA to open an investigation regarding harassment of female employees of the Department. On or about April 4, 2016, I was informed I would need to speak with ADOA. I asked Mr. Ruelas if it was regarding Ms. Donner and he informed me that it was not.

On or about April 5, 2016, I was interviewed by the investigator regarding conduct of Mr. Bergin and Mr. Briney, Chief of Government Policy, External Affairs Eric Sloan, and Mr. Ruelas. I was questioned regarding Mr. Briney's drinking and inappropriate treatment of women at the workplace.

I was informed that a decision had been made by ADOA and the Department that there would be no amendment of Ms. Donner's MAP. I also advised that in the future any directions given to Ms. Donner had to be documented and be very clear. In addition, Ms. Donner's EEOC complaint was found to be without cause in just three weeks.

On or about April 12, 2016, I was given a "Memo of Concern" by Tim Jackson, Acting Deputy Director regarding the March 22, 2016 meeting where I was directed to prepare a draft reply to Ms. Donner's MAP response. The "Memo" alleged I did not follow directions given during that meeting. Mr. Jackson did not attend that meeting and Mr. Ruelas confirmed with me that the information in the "Memo" was not accurate.

After meeting with Mr. Jackson, I felt he continuously harassed me, scrutinized everything that I did and intimidated me. I no longer felt safe and believed I was being subjected to a hostile work environment.

On or about April 13, 2016, I was informed during a Manager's meeting that Mr. Briney and Mr. Sloan were terminated as a result of the investigation. On or about April 20, 2016, I requested a meeting with Mr. Bergin; however he declined and I was told to speak with Mr. Jackson; however my conflict was with Mr. Jackson. Mr. Bergin finally agreed to meet with me and requested Deputy Director Rudy Casillas attend as well. Mr. Bergin denied providing the false information contained in the "Memo" and insisted Mr. Jackson was present during the March 22, 2016 meeting. I informed them I had followed the instructions exactly regarding the draft reply and it had been reviewed by ADOA and upper management. Mr. Casillas shared with me his experience with EEOC complaints filed against him and that he understood this was a difficult issue.

On or about April 22, 2016, I was informed by Mr. Casillas the "Memo" was dismissed, but he would continue with his investigation of my complaints regarding the retaliatory and misogynistic behavior of Mr. Jackson. I have yet to receive any report regarding my complaint.

On or about April 26, 2016, I met with the ADOA investigator and other managers regarding Ms. Donner's investigation. I was given a development plan by the investigator to get through the situation.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. **SIGNATURE OF COMPLAINANT** |
| Oct 18, 2016     *Larina J. Pixler* <br> Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 540-2017-00155 |

**Arizona Attorney General's Office, Civil Rights Division** and EEOC

*State or local Agency, if any*

On or about July 25, 2016, I was called into a meeting with Chuck Stratton, Sylvia Hernandez, HR Shared Services Manager, and Mr. Ruelas. Mr. Stratton informed me that my services were no longer needed and I had 30 minutes to clean out my office. I worked for Respondent for 20 years and was not given notice or any reason for my termination. I asked Ms. Hernandez if I could resign and she told me emphatically "no" and that I was "fired".

I believe that other females have left Respondent as a result of harassment and the misogynistic behavior of senior male staff members. I have heard comments by employees at ASRS that they had seen a number of "retirement age" individuals being terminated who were similarly situated to me; whereas I loved my job and had no desire to leave. There were comments that the Governor wanted to reduce the number of state employees by 24%; therefore it appears the State has engaged in terminating older employees to achieve the Governor's desired employment target as expressed in his "scorecard".

I believe I have been subjected to discrimination because of my sex (female) and retaliated against in violation of Title VII of the Civil Rights Act of 1964 and because of my age (81) in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Oct 18, 2016      *Larissa T. Pixler*  Date           Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  Larissa Pixler
     3166 E. Desert Willow Rd.
     Phoenix, AZ 85048

From:  Phoenix District Office
       3300 North Central Ave
       Suite 690
       Phoenix, AZ 85012

| | |
|---|---|
| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2017-00155 | Jeremy Yubeta, Supervisory Investigator | (602) 640-5028 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Elizabeth Cadle,
District Director

APR 1 6 2018
*(Date Mailed)*

Enclosures(s)

cc:
Ryan Ruelas
HR Administrator
ARIZONA STATE OF
Department Of Gaming
1110 W. Washington, Suite 450
Phoenix, AZ 85007

Nicholas Enoch
ARBETMAN LAW OFFICE
107 E. MYRTLE AVE
Phoenix, AZ 85020